STATE of Missouri, Respondent,

v.

Rederick CUMMINGS, Appellant,

**and**

Rederick CUMMINGS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 42794, 44919.

Missouri Court of Appeals, Western District.

June 30, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1992.

Application to Transfer Denied Oct. 27, 1992.

Robert L. Fleming, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

SPINDEN, Judge.

Rederick Cummings appeals his convictions for offering violence to a corrections officer, § 217.185 RSMo 1986, and attempted rape, § 564.011, RSMo 1986. Cummings claims that the trial court erred in overruling his objection to the state's peremptory challenge to a venireperson and in denying his Rule 29.15 motion. We affirm.

Viewing the evidence in the light most favorable to the verdict, the evidence established that on March 24, 1989, at approximately 9:00 A.M., Cummings, an inmate at the penitentiary, entered the office of the prison counselor and asked for some deposit slips. He left after she gave them to him, but he returned to tell her that he had lost something.

As the counselor rose from her chair and turned around, Cummings grabbed her shoulders. The counselor pleaded with him to let her go. She tried to reach for the phone, but Cummings threw her against a desk. As she was getting up, Cummings grabbed her from behind and reached up her sweater. The counselor screamed for help, but Cummings grabbed her by the throat. After she screamed three times, Cummings loosened his grip and said he would let her go if she promised not to tell anyone about the incident. The counselor promised, and Cummings left. The counselor reported Cummings' actions to Lt. Michael Plemmons.

Plemmons summoned Cummings to the captain's office and advised him that the counselor had reported the attack. Plemmons ordered Cummings to submit to a strip search, and Cummings hit Plemmons with his fist and knocked him to the ground. Cummings also tried to hit Captain Blank but missed.

The jury found Cummings guilty of attempted rape and offering violence to a correctional officer. The court sentenced him to 15 years and five years respectively, with the sentences to run concurrently.

Cummings argues that the trial court erred in overruling his motion to quash the jury panel. Cummings contends that the state exercised one of its peremptory strikes in a racially-discriminatory manner.

After conducting voir dire, the court went off the record and the attorneys made their strikes. Back on the record, the court administered an oath to the jurors and seated them. The state made its opening statement and presented its first witness. The prosecutor then, without the court's prompting, announced:

> Your honor, the State struck Venireman No. 9, Mr. Elmer Galbreath, who I believe appeared to counsel to be and I believe appeared to the Court, as well, to be an individual who is black, the same race as the defendant appears to be. Your Honor, my information is that Mr. Galbreath is related to a former prison guard.... My understanding is, sir, that he is either the cousin or the brother of; that's what I was informed by persons who purported to know, those being guards at the penitentiary; that the brother or cousin of the venireman, Mr. Galbreath, was fired from the employ of

the Missouri State Penitentiary as he was believed to be carrying contrabands in and refused to be searched at one time while he was employed, the last day he was employed, by the way. On that basis, the State chose to strike him, and not on any basis related to race.

Cummings objected:

Your Honor, we would like to object in that that individual was never asked the question during voir dire and, therefore, there is no indication in the court record that he had any prejudice or bias or in any way could not be impartial in this case. ... [W]e would request that the entire jury panel be stricken on that basis and we select a new jury.

The court overruled Cummings' objection and denied his request to quash the jury panel pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ The record does not reveal whether Cummings objected to the state's peremptory strike after voir dire and before the jury was seated. We should review allegations of due process violations concerning jury panel selections only if the objection to the jury venire was timely. *State v. Phillips*, 596 S.W.2d 752 (Mo.App. 1980). In this case, the record reveals only that Cummings did not move to quash the jury panel until after both sides made their strikes, the jury was seated, and the state had presented its first witness. As this court's Eastern District stated, in *State v. English*, 795 S.W.2d 610, 612 (Mo.App. 1990):

Alleged trial error must be brought to the trial court's attention at the earliest possible opportunity. *State v. Newman*, 699 S.W.2d 29, 32 (Mo.App.1985). The appropriate time to raise a *Batson* motion is "after the State has made, and before the defendant makes, peremptory strikes." *State v. Price*, 763 S.W.2d 286, 289 N. 3 (Mo.App.1988). A *Batson* Motion is waived unless timely raised. *State v. Smith*, 791 S.W.2d 744, 747–748 (Mo.App.E.D., 1990); *State v. Laurence*, 791 S.W.2d 729, 731 (Mo.App.E.D.1990).

By allowing the state to present evidence and letting jeopardy attach, Cummings ratified the jury panel and waived his right to raise a *Batson* challenge.

As the court stated in *Smith*, 791 S.W.2d at 747:

There simply is no justification for defense counsel to wait until the remaining venirepersons are discharged to challenge the state's peremptory strikes. If defense counsel does wait until the venire panel is discharged and the challenge is sustained, then the jury selection process must start anew, and an additional venire panel must be called. This simply delays justice, and, in those jurisdictions where an additional venire is not readily available, the delay can be substantial.

We conclude that Cummings waived his *Batson* challenge.

Cummings requests plain error review if we determined that he did not timely raise his *Batson* challenge. Having found no manifest injustice, we do not discern plain error. Rules 29.12 and 30.20.

In his second point, Cummings claims the motion court erroneously denied his Rule 29.15 motion. He asserts that the trial court and the state failed to make a sufficient record of the state's peremptory strike of a venireperson and that the state failed to disclose to Cummings exculpatory evidence known by the state. Because we decided that Cummings waived his *Batson* challenge, we find his contention that the trial court and the state failed to make a sufficient record of the peremptory challenge is without merit.

Cummings also contends that the state wrongly withheld evidence from him. Cummings discovered after his conviction that a former penitentiary investigator, Melvin Coonce, was willing to testify that prison guards had beaten Cummings after Cummings attacked the counselor. Coonce testified to the motion court that he saw prison guards strike and kick Cummings while Cummings was in restraints. He said that Cummings' nose and mouth were bleeding. Coonce told the court that he did not report the beating because prison administrators ordered him not to report it.

Cummings argues that had he known of this evidence he could have used it at trial and it would have made a difference in the trial's outcome.

 His point is without merit. Newly-discovered evidence is not cognizable in a post-conviction action. *Bremmer v. State,* 787 S.W.2d 761 (Mo.App.1990); *Trotter v. State,* 736 S.W.2d 536 (Mo.App.1987); *State v. Mims,* 674 S.W.2d 536 (Mo. banc 1984).

In the alternative, Cummings contends that the state knowingly used perjured testimony which is cognizable in a post-conviction action. To prevail on this theory, Cummings must show (1) the witness' testimony was false; (2) the state knew it was false; and (3) the conviction was obtained as a result of the perjured testimony. *Bryant v. State,* 604 S.W.2d 669 (Mo.App.1980). Cummings bears the burden of proof, and our review is limited to determining whether the motion court was clearly erroneous. *Id.*

Cummings fails to meet his burden. Coonce did not include the beating in his report. Cummings' attorney asked him, "At any time did the Cole County prosecutor's office or any investigator from that office question you about your knowledge about this case?" Cummings, answered, "I really don't recall whether I was questioned concerning any—I was never asked anything that I can remember about the assaults." Cummings failed to establish that the prosecutor knew of Coonce's testimony or had any other reason to doubt the testimony of the state's witnesses that Cummings was not beaten.

Further, the motion court had before it the video-taped testimony of Major Eberle that guards did not beat Cummings. The motion court was in a better position than this court to judge the credibility of witnesses. Whether to believe or disbelieve all or part of any witness' testimony was within its sound discretion. *Floyd v. State,* 518 S.W.2d 700 (Mo.App.1975); *Johnson v. State,* 774 S.W.2d 862 (Mo.App.1989). We find no basis for concluding that the motion

court wrongly believed Major Eberle over Coonce and Cummings.

For the same reason, we conclude that Cummings' claim that the state violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment is without merit. We discern no basis for overturning the motion court's conclusion that prison guards did not beat Cummings.

We conclude that Cummings waived his *Batson* challenge to the state's peremptory strike of the only black venireperson and that the motion court was not clearly erroneous in denying Cummings' Rule 29.15 motion. For these reasons, we affirm the judgments.

All concur.